# Connolly, Appellant, *v.* Union League of Philadelphia.

*Negligence—Proof—Unanticipated accident—Assumption of risk.*

In order that there may be recovery of damages therefor, negligence must be proven; it is not to be assumed from the mere happening of an accident.

Where the owner of premises makes no representation as to the condition of a cable, and where the workman employed by an independent contractor to repair a shaft in which it runs, makes his own examination of the surroundings, and satisfied himself as to the safety of the ap-

pliances, and has full control of them, the owner is not responsible for damages resulting from the breaking of the cable, where no reason to anticipate such breaking is shown, and no satisfactory reason therefor appears.

This is particularly true where it appears that the workman was engaged for days in the shaft, working within reach of the cable, and discovered no defect in it, made no complaint and took no precautions to avoid possible injury to himself from the breaking.

Argued March 24, 1908.  Appeal, No. 45, Jan. T., 1908, by plaintiff, from order of C. P. No. 5, Phila. Co., Sept. T., 1904, No. 1,610, refusing to take off nonsuit in case of Frank J. Connolly v. The Union League of Philadelphia.  Before MITCHELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ.  Affirmed.

Trespass to recover damages for personal injuries.  Before MARTIN, P. J.

The facts are stated in the opinion of the Supreme Court.

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was refusal to take off nonsuit.     •

*John H. Fow*, for appellant.—In this case the plaintiff was actually doing work for which the defendants had contracted with his employers, and as such employee had been at work for some days previous to the accident, and, consequently, was there on lawful business, and had the right to believe that the premises were reasonably safe, and that all reasonable care had been used by the defendant to protect him in order that no injury might occur : Severy v. Nickerson, 120 Mass. 306; Larmore v. Iron Co., 101 N. Y. 391 (4 N. E. Repr. 752) ; Pender v. Baggs, 178 Pa. 337 ; Pottstown Iron Co. v. Fanning, 114 Pa. 234 ; Phila. & Reading R. R. Co. v. Spearen, 47 Pa. 300 ; Schilling v. Abernethy, 112 Pa. 437; Duffy v. Sable Iron Works, 210 Pa. 326 ; Bright v. Barnett & Record Co., 88 Wis. 299 ; Indermaur v. Dames, L. R. 1 C. P. 274 ; Nichols v. R. R. Co., 83 Va. 99 (5 S. E. Repr. 171) ; Carleton v. Franconia Iron & Steel Co., 99 Mass. 216 ; Evansville, etc., R. R. Co. v. Griffin, 100 Ind. 221.

It was the defendant's duty to inspect the cable to ascertain if it was safe or fit for use before the plaintiff went to work in the shaft. The plaintiff had the right to assume that the elevator and its cables were safe and fit for use : Sharpley v. Wright, 205 Pa. 253 ; Kay v. Penna. R. R. Co., 65 Pa. 269 ; Phila. City Pass. Ry. Co. v. Hassard, 75 Pa. 367.

*W. W. Porter*, of *Porter, Foulkrod & McCullagh*, for appellee.—The nonsuit was proper : Jones v. Traction Co., 185 Pa. 75 ; Reese v. Clark, 146 Pa. 465 ; Welch v. Stone Co., 215 Pa. 34 ; Huey v. Gahlenbeck, 121 Pa. 238.

OPINION BY MR. JUSTICE POTTER, April 20, 1908 :

In the club house of the defendant there is a shaft running through the various floors of the building and affording space for the working of a double dumb-waiter apparatus. The Philadelphia Fire Proof Company contracted to line this shaft with fire proofing material, and it sent the plaintiff, its employee, to do the work. The dumb-waiters were box-shaped compartments six feet long and about two feet square, and were operated by a cable running over a grooved iron drum at the top of the shaft, and were so arranged that one of the boxes or cars went up as the other came down. They were operated by electric power, and when the plaintiff went to work upon the shaft he inspected the surroundings and requested the electric power to be turned off, and thereafter moved the waiters up and down by hand power as the progress of his work required. The dumb-waiters were intended to carry food and supplies from floor to floor, and were not intended to carry passengers. When the plaintiff had been engaged upon the work for several days, and while he was working near the bottom of the shaft, one of the dumb-waiter cars or boxes, which at the time was suspended above him, fell and injured him severely. He brought this suit to recover damages, alleging negligence by the defendant in not maintaining the car and its attachments in good and safe condition. At the trial of the cause judgment of nonsuit was entered which the court in banc, after argument, refused to remove.

The question is, was there any evidence of negligence which ought to have been left to the jury ? The accident resulted

from the breaking of the cable, but whether or not it was defective when plaintiff began work in the shaft, does not appear. The natural inference is, that it was not, or the plaintiff would have discovered the fact as he was working in close proximity to it for several days prior to the accident. No representation seems to have been made by the defendant as to the condition of the shaft, or as to the cars or compartments of the dumb-waiters or their attachments. Apparently the shaft was open to the inspection of the plaintiff, and he made his own examination and satisfied himself as to the safety of the surroundings and of the place in which he was to work. It was all under his own control. He did most of the work while standing on top of the car, using it as a movable scaffold in the shaft, and it was only when lining the shaft near the bottom, that it became necessary to work beneath the car. Even then his testimony shows that he might have guarded himself against the falling of the box, by placing plank or scantling crosswise in the shaft, with the ends resting upon the cross-pieces, just as he did at times in arranging a board upon which to stand while doing the work. The truth seems to be that, although working in the shaft and about the box or car for several days and being within arm's length of the cable while standing upon the car, he did not discover any defect in the cable, or in the apparatus, and did not deem it necessary to take any precautions against a possible fall of the car, even when he was working beneath it.

Our examination of the evidence has not disclosed anything from which negligence upon the part of the defendant might properly be inferred. We agree with the learned judge of the court below, that the nonsuit was properly entered, and the judgment is affirmed.